ORTEGA, P. J.
*9 Petitioner Eugene Water and Electric Board (EWEB) seeks judicial review of a final order by the Public Employees Retirement Board (board) that, on summary determination, denied as untimely EWEB's request to recorrect the starting employment dates, for the purpose of calculating Public Employee Retirement System (PERS) benefits, for respondents, five of EWEB's employees. Respondents were employed through a temporary staffing agency before EWEB hired them as regular employees. For many years, EWEB did not consider those temporary employment periods eligible for PERS service time. Eventually, because of prompting *570 from some of respondents or PERS, and on the advice of its counsel, EWEB reconsidered its position and indicated to PERS that respondents' PERS eligibility should be determined by their initial hiring dates, not the dates that they ceased being paid through a temporary staffing agency and were hired as regular employees by EWEB. PERS made the corrections, notified respondents of them, and invoiced EWEB for its increased contributions based on the corrected service times. EWEB paid the invoices.
More than 60 days later, EWEB obtained a different view from its counsel and sought to have PERS recorrect the start dates,[1] framing its requests as requests for correction of records under OAR 459-001-0025. That rule provides that the PERS director is authorized to correct the records of PERS members.[2] PERS, however, viewed those requests as *10 seeking review of a staff action or determination under OAR 459-001-0032 and, because such a request for review must be made within 60 days of the staff action or determination sought to be reviewed, rejected them as untimely.[3] Those conflicting views form the heart of this dispute and present the question that we must answer on judicial review: Did the board err when it granted summary determination to PERS and respondents on the basis that EWEB's request under OAR 459-001-0025 to correct its records was instead a request for review of a staff action or determination under OAR 459-001-0032 and was therefore untimely? Our answer is that the board did not err, and, therefore, we affirm.
We review for legal error the board's grant of summary determination. Wolff v. Board of Psychologist Examiners , 284 Or. App. 792, 800, 395 P.3d 44 (2017). Summary determination is appropriate only when the evidence-viewed in the light most favorable to the nonmoving party-establishes that "there is 'no genuine issue as to any material fact that is relevant to resolution of the legal issue as to which a decision is sought,' and the party filing the motion[ ] 'is entitled to a favorable ruling as a matter of law.' " Id . (quoting OAR 137-003-0580 ).
Although each respondent's circumstances vary somewhat, we recount for purposes of our analysis the facts common-except as noted-to all of them. The pertinent facts are undisputed.[4] The key circumstance giving *571 rise to *11 this dispute is that, for a period of time, respondents were paid through a temporary staffing agency, and EWEB did not consider those periods of time eligible for PERS benefits.[5] In this case, for part of each respondent's employment with EWEB, the respondent was employed through a temporary staffing agency. Originally, EWEB did not report to PERS the start dates or the periods for which respondents were employed through a temporary staffing agency, but rather reported the start date or other dates when respondents were considered regular EWEB employees and paid directly by EWEB. Thus, respondents' temporary employment periods were not used to calculate their PERS service time, and EWEB did not contribute to PERS on their behalves for those periods. For one respondent, EWEB's counsel remarked that a transfer of status to temporary employee was intentional on EWEB's part to "break" the respondent's eligibility "so as to avoid PERS costs."
Then EWEB changed its position. In the cases of respondents Alban, West, and Enders, the change began when EWEB notified them individually that it had learned that PERS possibly viewed their temporary staffing periods as PERS-eligible employment and that they should directly contact PERS. Alban, West, and Enders followed up on those notifications and wrote to PERS asking for corrections. As for Wedin, EWEB's payroll administrator wrote to PERS to request that PERS review Wedin's membership eligibility date and, as for Williams, he at some point wrote to PERS to request that it correct its records to reflect the time in which Williams worked for EWEB on a "temporary/contract *12 service" basis.[6] In some cases, EWEB provided PERS with updated information to support its position that, for purposes of calculating PERS eligibility, the employment period should be corrected to reflect the time respondents were employed through a temporary staffing agency. In another case, West included in his communication to PERS a memorandum from EWEB to support an earlier service date. For each respondent, during 2010 and 2011, EWEB's counsel advised EWEB that, after reviewing documents provided by EWEB and considering ORS 238.015, respondents had not been independent contractors while they were paid through the temporary staffing agency and were not exempt from the definition of employee for purposes of determining PERS eligibility.
During 2010 and 2011, PERS notified respondents that it was changing either the hire date or the period for which they were entitled to PERS service time. Moreover, PERS invoiced EWEB for its required contributions for the changes to each respondent, and EWEB paid the invoices.
EWEB later sought and received a different opinion from its counsel regarding whether respondents were PERS eligible during their temporary employment. In March 2012, EWEB's counsel wrote to PERS, opining that the determination of creditable service time did not end at the question of whether respondents were "employees" or "independent contractors" for the periods in which they were employed through a temporary staffing agency. Rather, EWEB's counsel took the position, citing ORS 238.015(1), OAR 459-010-0003(1), and *572 ORS 238.005(21)(a), that "a person is not 'in the service of a public employer' when he or she is not receiving 'cash out of the funds of a public employer [or other advantages the employer furnishes] in return for services to the *13 public employer.' " See 294 Or. App. at 9 n. 1; Eugene Water and Electric Board v. PERB , 289 Or. App. 302, 306, 410 P.3d 1026 (2017), rev. allowed , 362 Or. 860, 418 P.3d 758 (2018). Thus, counsel asked PERS to "correct its records to reflect that" Alban, West, Wedin, Enders, and Williams were PERS-eligible employees only as of the dates that they were hired as regular EWEB employees. The letters acknowledged that EWEB had previously sought a correction of the employment periods eligible for PERS, but had since determined that its original dates were correct determinations of PERS benefits.[7]
In denying those requests, PERS acknowledged that OAR 459-001-0025"provides general authority for the Director to correct agency records" but stated that the rule "does not mandate the Director to make changes to agency *14 records based upon a party's request." The denials noted that PERS had already made corrections to respondents' accounts following its determinations as to when respondents should be treated as employees for purposes of PERS membership eligibility, that EWEB had failed to request review of those determinations within 60 days, and that, therefore, PERS was time barred from granting EWEB's request. EWEB petitioned for contested case hearings.
The cases were consolidated before the Office of Administrative Hearings, and both PERS and EWEB moved for summary determination on the issues of whether EWEB's records correction requests were time barred under OAR 459-001-0032 and barred by the doctrines of claim preclusion, issue preclusion, and law of the case.[8] EWEB contended that PERS incorrectly categorized EWEB's requests as being for review of the invoices previously issued in respondents' cases. In EWEB's view, it was seeking correction of the records for each respondent under OAR 459-001-0025(1)(b) and there was no time limit to request such a correction. In response, PERS asserted that, when read together, OAR 459-001-0025 and OAR 459-001-0032 provide that the PERS director has no time limit for correcting PERS records, but if PERS takes a staff action or makes a determination on a record request, then the *573 parties must appeal the staff action or determination within 60 days. The ALJ agreed with EWEB, concluding that its requests were not barred on grounds of timeliness.
On review, the board disagreed with the ALJ's conclusion, stating that the "ALJ failed to grasp PERS's point, which is that the absence of a time limit in OAR 459-001-0025(1)(b) does not mean that no time limit applies." It noted that in each of respondents' cases, PERS "previously took staff actions on the same issue" after EWEB wrote letters supporting the determination that the members were employees of EWEB while employed through an employment agency, and "EWEB's legal counsel wrote letters concluding *15 that the employees' PERS service began on the dates adopted by PERS when it made the corrections." That is, "EWEB assisted and encouraged the members to seek the corrections," and PERS staff "took action to grant the corrections requested by the members." Further, PERS issued invoices to EWEB, which presented EWEB with another opportunity to object to the determination of the issue. "It is not surprising that [EWEB] did not, because it supported the corrections." Accordingly, the board denied EWEB's motion for summary determination and granted PERS's motion for summary determination.
On review here, EWEB argues that, because PERS is prohibited from paying retirement benefits that are not allowed by statute, the board "cannot be bound to an action that would give creditable service to an individual when such service is not permitted by statute." EWEB relies on the well-established rule that the Public Employees Retirement Fund (the fund) "is a trust that must be administered in accordance with its governing statutes." Bowen v. PERB , 227 Or. App. 444, 450, 206 P.3d 232, rev den , 346 Or. 589, 214 P.3d 821 (2009) (citing ORS 238.660 ; OAR 459-005-0010(2) ); Wilkinson v. PERB , 188 Or. App. 97, 100, 69 P.3d 1266 (2003) (citing ORS 238.660 ; OAR 459-005-0010(2) ). Given that mandate, EWEB asserts, it was impermissible for PERS to "rely on a 60-day limitation period under OAR 459-001-0032(2) to correct an employee's records pursuant to a request made by a public employer under OAR 459-001-0025(1)(b), particularly when the correction is necessary to establish the correct retirement benefits for the employee." Further, in EWEB's view, the board's reliance on OAR 459-001-0032(2) was misplaced because that "rule applies only to public employer requests for review of PERS staff actions or determinations, which is not what EWEB sought."
Respondents answer that EWEB's position that PERS is statutorily obligated to correct its records whenever a public employer asks is without merit. They posit that "EWEB simply disagrees with PERS's determination-and EWEB's former legal opinion-that the members were PERS-eligible during the time they were paid through a temporary agency"; no statutes require the director to "accept untimely challenges to account adjustments that it previously made."
*16 Further, respondents point out that EWEB does not dispute that PERS's corrections to the membership eligibility periods were staff determinations to which OAR 459-001-0032 applies, but rather relies on how EWEB characterized its request to change those initial corrections and its implicit position that OAR 459-001-0025 is an alternative way to challenge staff determinations that is without any time limits. Further, respondents assert that the board's conclusion that PERS was correct to treat the request as for review of a staff action or determination is a straightforward application of OAR 459-001-0032. We conclude that the board did not err.
EWEB takes issue with PERS's interpretation and application of OAR 459-001-0032 as well as PERS's failure to view OAR 459-001-0025 in the same way EWEB does. Before we address the parties' arguments, we consider the degree of deference we afford to PERS's interpretation of those rules. "[U]nder the principle announced in Don't Waste Oregon Com. v. Energy Facility Siting, 320 Or. 132, 142, 881 P.2d 119 (1994), an agency's plausible interpretation of a rule that the agency itself promulgated deserves deference unless the interpretation conflicts with the rule's text, context, or another source of law (including case law)." Jordan v. Employment Dept. , 195 Or. App. 404, 408, 97 P.3d 1273 (2004). However, "where there is *574 only one plausible way to interpret an agency's rule so as not to conflict with its own text, there is no interpretation by the agency, but merely a straightforward application." Smith v. PERB , 235 Or. App. 159, 164, 230 P.3d 88 (2010). Here, we agree with respondents that PERS's view that EWEB's requests for a correction of the previous corrections it had made were untimely under OAR 459-001-0032 and that OAR 459-001-0025 did not provide an alternative means to seek the recorrections of respondents' records was a straightforward application of those rules that did not require interpretation.
We proceed to an overview of the statutory context and an explanation of the relevant rules. The board governs PERS and establishes rules for administering the system. ORS 238.650. The board employs a director who administers PERS in accordance with those rules and appoints agency staff. ORS 238.630 ; ORS 238.645. OAR 459-001-0025(1)(b)
*17 provides that the PERS director is "authorized to take all action necessary or desirable to administer the system including but not limited to * * * [a]ct[ing] on any application for * * * correction of records ." (Emphases added.) Moreover, OAR 459-001-0025(3) authorizes the PERS director "to delegate to subordinates the authority to take any action on the Director's behalf." Two rules allow review of those actions: OAR 459-001-0030 and OAR 459-001-0032. The former applies to persons, and the latter, applicable in this case, applies to public employers. OAR 459-001-0032 provides, in relevant part:
"(1) For purposes of this rule, 'Director' means the executive director of PERS, or an administrator appointed by the executive director.
"(2) Request for review. Any public employer may file with the Director a request for review of a staff action or determination, except as provided in ORS 238.450 or in Board rules on disability retirement. The request must be filed within 60 days following the date the staff action or determination is sent to the public employer requesting review."
It is true, as EWEB states, that the fund must be administered in accordance with the law. However, the decisions on which EWEB relies are inapposite. In Bowen , we held that a state agency official lacked the authority to promise that pre-PERS service would count toward retirement benefits because that promise was contrary to state law and the mandate that the fund "is a trust that must be administered in accordance with the governing statutes." 227 Or. App. at 450, 206 P.3d 232. However, the petitioner's challenge in that decision was brought under OAR 459-001-0030 ; it was a challenge to a staff determination and subject to the procedure set out in that rule. Id . at 447, 206 P.3d 232. In Wilkinson , we invoked the same mandate to conclude that neither the petitioner's withdrawal of retirement funds nor a marital dissolution had the effect of invalidating a beneficiary designation and that, under ORS 238.390(1), benefits will be paid to beneficiaries designated by the member. 188 Or. App. at 100-01, 69 P.3d 1266. There, PERS followed the applicable law as required by the PERS statutes, and we analyzed that determination irrespective of whether PERS's procedural rules were followed. The circumstances of those *18 cases involved alleged errors by PERS where neither PERS, the affected member, nor the public employer had previously examined the asserted positions.
In this case, PERS made staff determinations in accordance with its and EWEB's understanding of the relevant statutes when it made the initial corrections to respondents' records. We reject EWEB's contention that, in a case such as this, OAR 459-001-0025 requires PERS to make another correction to an employee's records at any time. EWEB's argument relies on a misreading of OAR 459-001-0025, which provides that the PERS director is "authorized to take all action necessary or desirable to administer the system." OAR 459-001-0025(1) (emphasis added). That provision lacks any indication that OAR 459-001-0025 establishes a procedure for, among other actions, the correction of records, nor does it establish the obligation advanced by EWEB, that the director must act upon the request of a public employer made at any time. Moreover, *575 OAR 459-001-0025 provides that the director is "authorized to delegate to subordinates the authority to take any action on the Director's behalf." Under that delegation, combined with the board's rulemaking authority, see ORS 238.650, the board has established a procedure for public employers set out in OAR 459-001-0032 that requires a request for review of a staff action or determination by the director to be made within 60 days of when the notice of staff action or determination was sent to the public employer.
Hence, the application of OAR 459-001-0032 to EWEB's letters seeking correction of records was straightforward. For each respondent, PERS staff took an action or made a determination to correct the records consistent with EWEB's communications to PERS supporting a determination that respondents' temporary employment periods were service time, and EWEB's counsel supported that determination as correct. Accordingly, it was clear to EWEB upon receiving invoices that respondents' accounts had been corrected and why. At that point, EWEB had an opportunity to timely object. It did not. Those facts illustrate that, when respondents initially sought correction of their records and were encouraged and assisted in doing so, PERS did what EWEB asserts on review it was required to do: It corrected *19 the records of its members. That correction was a staff action or determination made under the director's delegation authority where neither PERS nor respondent had had occasion to examine the issue. Once action was taken or a determination made, any request to undo that staff action or determination had to be made within 60 days as required by OAR 459-001-0032(2).[9]
Accordingly, we affirm the grant of summary determination in favor of respondents.
Affirmed.

The subsequent view by EWEB and its counsel was at issue in Eugene Water and Electric Board v. PERB , 289 Or. App. 302, 410 P.3d 1026 (2017), rev. allowed , 362 Or. 860, 418 P.3d 758 (2018). In that case, the respondent's challenge to PERS's determination that he was not PERS-eligible for the time that he was an employee of EWEB but was paid indirectly through a temporary staffing agency was timely. The record in that case showed that the respondent was an employee of EWEB in virtually all respects except for the fact that for a period of his employment he was "paid through" a temporary employment agency; we rejected the same legal arguments made by EWEB's counsel in support of EWEB's attempt to recorrect respondents' records and held that the respondent in that case was entitled to PERS membership when he was paid through an intermediary. Id . at 305, 313, 410 P.3d 1026.

OAR 459-001-0025 provides, in part:
"(1) The Director is hereby authorized to take all action necessary or desirable to administer the system including but not limited to:
" * * * * *
"(b) Act on any application for refund of contributions; crediting service, correction of records, retirement for disability or service, and death benefits and allowances[.]
" * * * * *
"(2) The Director may refer any matter to the Board or to an administrative law judge for a contested case or other hearing.
"(3) The Director is hereby authorized to delegate to subordinates the authority to take any action on the Director's behalf."

OAR 459-001-0032(2) provides:
"Request for review. Any public employer may file with the Director a request for review of a staff action or determination, except as provided in ORS 238.450 or in Board rules on disability retirement. The request must be filed within 60 days following the date the staff action or determination is sent to the public employer requesting review."

Despite the purely legal nature of the summary determination procedure, in this case, the final order contains a section entitled "Findings of Fact." No party on review asserts that the board improperly engaged in factfinding, however, so we do not address that further; we merely state the facts in the light most favorable to the nonmoving party, EWEB. See, e.g. , Hamlin v. Public Employees Retirement Board , 273 Or. App. 796, 798 n. 2, 359 P.3d 581 (2015).

ORS 238.015 provides, in part, that
"[n]o person may become a member of the system unless that person is in the service of a public employer and has completed six months' service uninterrupted by more than 30 consecutive working days during the six months' period. Every employee of a participating employer shall become a member of the system at the beginning of the first full pay period of the employee following the six months' period."
(Emphasis added.) Whether an employee is "in the service of a public employer" when employed through a third-party employment agency is the subject of EWEB's underlying argument in this case.

PERS initially rejected Williams's request, and Williams appealed that determination. Subsequently, EWEB informed PERS that Williams was an employee for the disputed period of employment for purposes of calculating PERS service time and its necessary employer contributions. PERS then reversed its position. Williams separately argues on judicial review that, because PERS's determination of his request for a correction of records had already been the subject of a staff action or determination, which was timely appealed by him, it cannot be subject to a correction of record by EWEB. It is unnecessary to address Williams's argument because we conclude that EWEB's request for review of PERS's last determination was untimely.

For example, the letter from EWEB's counsel to PERS regarding Enders stated:
"I am writing to request, pursuant to OAR 459-001-0025(1)(b), a correction of records provided by [EWEB] for * * * Enders. PERS should correct its records to reflect that Mr. Enders has been a PERS eligible employee of EWEB since April 1, 1988.
"EWEB originally reported April 1, 1988, as Mr. Enders' start date with EWEB. Then, last year, PERS asked EWEB to review Mr. Enders' hire date. Specifically, PERS asked EWEB to 'review OAR 459-010-0030 (Determination of Employee Status) and 459-010-0032 (Determination of Independent Contractor Status) to evaluate whether' EWEB would like to adjust the reporting of Mr. Enders for the time that he was placed at EWEB by a temporary staffing agency. EWEB responded that Mr. Enders should likely be treated as a PERS eligible employee from October 31, 1983. Since giving that response, EWEB has determined that the original date of April 1, 1988, is the correct start date.
"Statutes and rules other than those PERS directed EWEB to consider affect an individual's PERS eligibility date. [Description and citation of ORS 238.015(1), OAR 459-010-0003(1), and ORS 238.005(21)(a).]
" * * * * *
"In other words, a person is not 'in the service of' a public employer when he or she is not receiving 'cash out of the funds of a public employer [or other advantages the employer furnishes] in return for services to the public employer.'
"Mr. Enders was not employed by EWEB until April 1, 1988. EWEB is informed that during the period from October 31, 1983, through or about April 1, 1988, Mr. Enders was employed by a company known as Delta-T, Inc. During that time, Delta-T placed Mr. Enders at EWEB.
"After EWEB hired Mr. Enders on April 1, 1988, he continued in EWEB's employ until he resigned June 28, 1997, and then he returned to EWEB on November 17, 1999. Accordingly, Mr. Enders' start date with EWEB should be April 1, 1988."
(Third brackets in original.)

The board's determination that EWEB was barred from seeking recorrection based on claim preclusion, issue preclusion, and law of the case was an alternative basis for its order-also assigned as error by EWEB-but we do not address that ground because we affirm the board's determination that EWEB's requests were untimely under OAR 459-001-0032.

EWEB appears to rely on the fact that it "did not ask for a 'review of a staff action or determination.' " To the extent that EWEB means to assert that its request to recorrect respondents' records does not fall under OAR 459-001-0032 because it did not explicitly seek review of a staff action or determination, we view that argument with incredulity. In almost every respect, EWEB's requests for "correction of records" followed the substantive requirements for requests for review of a staff action or determination. 294 Or. App. at 12 n. 6. That is, OAR 459-001-0032(4) provides that requests for review of a staff action or determination must be in writing and that the public employer must describe the staff action or determination for which review is requested and provide a "short statement of the manner in which the action is alleged to be in error"; a "statement of facts that are the basis of the request"; a "[r]eference to applicable statutes, rules or court decision relied upon"; a "statement of the relief requested"; and a "request for review." Substantively, that is what EWEB sought. That it couched its request so as to avoid some of the language required by such a request-such as "request for review"-is insufficient to bypass the procedural requirements of OAR 459-001-0032(2).